**Lucille FORCE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; DEPARTMENT OF LABOR; Fireman's Fund Insurance Company, Respondents.**

No. 89–70520.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 1991.

Decided July 10, 1991.

Victoria Edises, Kazan, McClain, Edises & Simon, Oakland, Cal., for petitioner Force.

Richard C. Kelley, Hanna, Brophy, Maclean, McAleer & Jensen, San Francisco, Cal., for respondents Kaiser Aluminum and Chemical Corp. and Fireman's Fund Ins. Co.

Samuel J. Oshinsky, U.S. Dept. of Labor, Washington, D.C., for respondent Director, Office of Workers' Compensation Programs.

Before D.W. NELSON, KOZINSKI and T.G. NELSON, Circuit Judges.

KOZINSKI, Circuit Judge.

This is an appeal from a Benefits Review Board (BRB) decision awarding petitioner Lucille Force benefits pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. We must decide whether, and to what extent, an employer is entitled to set off against its workers' compensation liability amounts paid to a claimant by a third party as part of a civil settlement.

## Facts and Prior Proceedings

George Force was exposed to asbestos while employed by Kaiser Aluminum and Chemical Corporation in the 1940s. Prior to his 1984 death from asbestos-related mesothelioma, he filed a claim against Kaiser for LHWCA disability benefits. He and his wife Lucille also sued various asbestos manufacturers (the "third parties"). Mr. Force sought recovery for his personal injuries and Mrs. Force sought recovery for loss of consortium. They also asked for punitive damages. Before the LHWCA case went to trial, they settled their third party claims for $480,360. As part of the settlement, Mrs. Force and the couple's two children, Gary and Robert, waived all their potential claims for wrongful death.

After Mr. Force's death, Mrs. Force filed a claim against Kaiser under LHWCA for widow's death benefits, medical expenses and the disability benefits that had accrued to her husband before he passed away. At the hearing before the ALJ, the employer argued that it is entitled to reduce its LHWCA liability by the full amount Mrs. Force and the children obtained under the settlements with the third parties. Mrs. Force argued that the employer should be entitled to offset its liability only by that portion of the third party settlement intended as compensation for economic loss—the injury for which the employer is liable under LHWCA. She also argued that the employer was not entitled to any offset at all against the death benefits because the statute does not allow an offset. In the alternative, Mrs. Force argued that the employer should only be entitled to offset its death benefits liability by that portion of the settlement attributable to *her* wrongful death claim, i.e., no offset should be available for that portion of the settlement attributable to the wrongful death claims of her children. As evidence

of the various components of the third party settlement, she offered the deposition testimony of David McClain, the attorney who had negotiated the settlement on behalf of the family.

The ALJ allowed the employer a credit against its liability in an amount equal to the entire third party settlement. He reasoned that this was appropriate because the settlement agreements did not allocate specific amounts to the various claims. The ALJ rejected the allocation suggested by McClain in his deposition, finding that "[a]ny allocation, made subsequent to the settlement by someone other than the *parties* to the settlement, [is] based on pure speculation." ER 25 (emphasis in original).

The BRB agreed that McClain's testimony was not sufficient to establish apportionment for purposes of an offset. ER 31. It went on to say that an apportionment as to various types of damages was not necessary anyway because an "employer may always offset its workers' compensation liability against the total net third-party recovery of a party even if it includes such items as pain and suffering and punitive damages." ER 32.

Addressing the employer's liability for death benefits, the BRB rejected Mrs. Force's argument that an offset was unavailable under the statute. It ruled that the employer could offset wrongful death damages obtained by the widow in a third party settlement, but agreed with Mrs. Force that the "employer would only be entitled to offset its liability to *claimant* for death benefits against those portions of the third-party recovery received in exchange for the surrender of *her* rights." ER 34 (emphasis in original). Finding that there was insufficient evidence of apportionment among parties, the BRB nevertheless upheld the ALJ's offset of the entire third party settlement. ER 34.

Mrs. Force has appealed.

## Discussion

Whether and to what extent funds recovered in settlements with third parties may be offset against benefits recovered under LHWCA is a question of first impression in this circuit. While this is a question of law that we review de novo, we accord "considerable weight" to the construction of the statute urged by the Director of the Office of Workers' Compensation Programs, as he is charged with administering it. *McDonald v. Director, OWCP*, 897 F.2d 1510, 1512 (9th Cir.1990).

Two types of LHWCA benefits are at issue here. Disability benefits are available to injured employees under 33 U.S.C. § 908(a). An employee who is permanently disabled is entitled to benefits equal to two-thirds of his average weekly wages. Id. A surviving widow may obtain any unpaid portion of the employee's disability award. Id. § 908(d)(1)(A). In addition, death benefits are available to the survivors of an employee under 33 U.S.C. § 909 if the occupational injury causes death. Again, the amount of compensation is based on the employee's average weekly wages. Id.

The LHWCA allows employers to offset amounts that employees recover from third parties:

> [T]he employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person. Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred by such person in respect to such proceedings (including reasonable attorneys' fees).

33 U.S.C. § 933(f). We must construe this provision in the context of employee recoveries from third parties in personal injury actions. These recoveries often include much more than the economic damages obtainable under LHWCA.

The Director's position is that section 933(f) allows employees to offset all types of damages (i.e., both economic and non-economic). But the Director argues that settlements must be apportioned among the various parties to the settlement because a claimant's LHWCA benefits may be reduced only by the portion of the third party

settlement that is attributable to her. In other words "section 33(f) mandates that decedent's disability benefits be offset by all third-party proceeds recovered by the decedent and that claimant's death benefits be offset by that portion of her third-party recovery attributable to her wrongful death claim." Director's Brief at 12.

## A. *Apportionment Among Types of Damages*

■ We adopt the Director's position that the statute does not call for apportionment among types of damages. On its face, the statute does not distinguish among the various types of damages that might be recovered in a third party action for a particular injury or death. It simply says that an employer may offset "the net amount recovered against such third person" for the occupational injury or death that is compensable under the Act. 33 U.S.C. § 933(f). The "net amount" is defined as the actual amount of recovery less litigation fees. Id. As the Director argues, "[t]here is no allowance for insulating any portion of the recovery from offset, save litigation expenses." Director's Brief at 12.

Because the statute is easily susceptible to the Director's interpretation, we need go no further. We note, however, that the D.C. Circuit, the only other court of appeals to have addressed this question, has also adopted the Director's position. In *Brandt v. Stidham Tire Co.*, 785 F.2d 329 (D.C.Cir.1986), a LHWCA claimant argued that the ALJ improperly deducted from his LHWCA benefits the full amount for which

he settled his personal injury tort claim against a third party, including the amount which represented damages for pain and suffering. The D.C. Circuit rejected this argument, holding that the ALJ properly applied LHWCA in deducting the recovery for pain and suffering. The court noted that this interpretation of LHWCA is in accord with the prevailing rule under state workers' compensation statutes of full offset for third party recoveries for pain and suffering, even when the portion of the award for pain and suffering is clearly separable from the portion attributable to economic losses. Id. at 331.[1]

■ We hold that the ALJ did not err in allowing Kaiser to offset non-economic damages such as pain and suffering and punitive damages. LHWCA allows employers to offset the entire amount of a claimant's third party recovery.

## B. *LHWCA Death Benefits*

■ We reject Mrs. Force's argument that section 933(f) does not provide for any offset against her death benefits. She contends that section 933(f) does not apply to her because she was not a "person entitled to compensation" at the time she entered into the settlement, which was prior to her husband's death. Again, we defer to the Director's view that section 933(f) does not require the claimant's status as a "person entitled to compensation" to be determined at any particular time; "[t]he only relevant question is whether the claimant is impermissibly recovering twice for the same injury, regardless of when such payments occur." Director's Brief at 26.[2] If Mrs. Force had successfully sued for wrongful

---

**1.** The Supreme Court came to the same conclusion when interpreting 5 U.S.C. § 8132, the parallel offset provision of the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 et seq., which is the workers' compensation scheme for federal employees that entitles them to medical expenses and lost wages. In *United States v. Lorenzetti*, 467 U.S. 167, 179, 104 S.Ct. 2284, 2291, 81 L.Ed.2d 134 (1984), the Court held that section 8132 "entitles the United States to be reimbursed for FECA compensation out of any damages award or settlement made in satisfaction of third-party liability for personal injury or death, regardless of whether the award or settlement is for losses other than medical expenses and lost wages."

The Court noted that this reading of the offset provision was "evident on the face of the stat-

ute," id. at 173, 104 S.Ct. at 2289, which "expressly creates a general right of reimbursement that obtains without regard to whether the employee's third-party recovery includes losses that are excluded from FECA coverage." Id. at 174, 104 S.Ct. at 2289. The LHWCA offset provision is equally clear on its face; it does not distinguish between third-party recoveries for losses that are covered by LHWCA and those that are not.

**2.** The BRB has adopted the Director's interpretation in several recent decisions. See, e.g., *Armand v. American Marine Corp.*, 21 BRBS 305, 310–11 (1988); *Castorina v. Lykes Brothers Steamship Co.*, 21 BRBS 136, 141 (1988).

death after her husband's death, Kaiser clearly would be entitled to offset the damages recovered against its death benefits liability. Instead, she settled her *potential* wrongful death claims prior to Mr. Force's death. Section 933(f) is equally applicable and allows the employer to offset the third party recovery.

## C. *Apportionment Among Parties*

■ We similarly defer to the Director's view that section 933(f) allows the employer to offset only that portion of a third party settlement attributable to the claimant, which means that there must be apportionment of damages among parties to the settlement.

The Director's position is a reasonable interpretation of the statutory language: The offset provision applies to the third party recovery obtained by "the person entitled to compensation" under the Act. 33 U.S.C. § 933(f). An employer is entitled to offset its liability to a particular claimant only for the third party damages received by the claimant for the covered occupational injury or death.

Here, two members of the Force family were "entitled to compensation" under the Act: George Force, who was awarded inter vivos disability benefits, and Lucille Force, who was awarded death benefits. The Force children did not file claims for LHWCA benefits and are not entitled to them; section 933(f) simply does not apply to the children or their third party recovery. Hence, the ALJ should have apportioned the third party settlement among Mr. Force, Mrs. Force and the two children so that the amounts attributable to the children could have been factored out and the amounts attributable to Mr. and Mrs. Force credited against their respective LHWCA benefits.[3]

## D. *Burden of Proof of Apportionment*

■ We now consider who bears the burden of proof regarding the apportionment of a settlement that covers multiple parties, i.e., who bears the burden of showing

what portion of the settlement is attributable to the claimant. The Board here implicitly placed the burden on Mrs. Force by upholding the ALJ's decision to offset the entire settlement amount because he had rejected the evidence of apportionment she offered. As we understand the BRB's position, it would place the burden of proving the apportionment on the claimant and allow an offset in the full amount of the settlement if the claimant cannot meet this burden.

We agree with the Director that this contravenes our case law and the purposes of LHWCA. In *Parsons Corp. of Cal. v. Director, OWCP*, 619 F.2d 38, 41 (9th Cir. 1980), we held that LHWCA's "overall humanitarian policy" of compensating employees for their injuries requires that "all doubtful questions of fact be resolved in favor of the injured employee." Placing the burden of proof on employers is particularly appropriate in the context of section 933(f) because the employer remains liable for the full amount of the statutory compensation absent a showing that the claimant has been compensated by a third party. To ensure that the claimant receives his due, the employer must carry the burden of proving what is the claimant's portion of the group settlement. Until the employer makes this showing, it is not entitled to an offset.

Here, Kaiser presented no evidence as to the proper apportionment of the Force family settlement. As the Director points out, however, this case was tried on the theory that Mrs. Force bore the burden of proof. Because the employer should be given the opportunity to submit evidence to meet its burden of proof, this case must be remanded to the ALJ for further fact-finding on the issue of apportionment.

## E. *Sufficient Evidence of Apportionment*

The task of unscrambling the component parts of a settlement among family members is a difficult one. Related parties frequently settle for a lump sum, giving no

---

**3.** As explained above, see page 982, Mrs. Force has succeeded to Mr. Force's claim for disability benefits because they were unpaid at the time of

his death. Hence, she will in fact receive the LHWCA disability award, offset by the amount Mr. Force recovered from third parties.

thought to how the total would be implicitly allocated among them. Even if the settlement agreement contains an explicit allocation, the apportionment may not reflect reality; because the defendant has no particular interest in how the settlement sum is distributed, the apportionment may reflect merely the preferences of the family members. The task is even more difficult where some of the settlement parties are unemancipated minors: amounts purportedly paid to them may reflect tax or estate law considerations rather than economic reality.

■ In making the apportionment determination, therefore, the ALJ must be wary of an apportionment suggested by the settling parties or their counsel. Instead, the ALJ should look to such objective factors as how the settlement sum was actually distributed among the family members, and the going rate for settlements or judgments for the same types of injuries. Ultimately, this is the type of issue that cannot be resolved with scalpel-like precision and we will accord considerable deference to the ALJ's determination, based on the record and the ALJ's own judgment and experience.

In this case, the ALJ did not abuse his discretion in rejecting the allocation proposed by Mr. McClain, the Force family attorney in the civil suit.[4] Mr. McClain made his apportionment after the fact, and in particular, after his former client had filed for LHWCA benefits. He also had an obvious bias in that his firm still represented Mrs. Force. The ALJ was not bound to give any weight to his unilateral view of the settlement.

As noted, this case was tried on an incorrect theory of apportionment. The parties therefore did not have an opportunity to present relevant evidence to the ALJ. We therefore remand for retrial on this issue which, subject to the discretion of the ALJ, will probably require further discovery on the question of apportionment.

### Conclusion

The Board's order is affirmed in part, reversed in part and remanded to the ALJ for retrial on the issue of apportionment of the third party settlement among the parties.

---

**4.** McClain apportioned the settlement as follows:

| | | |
|---|---|---|
| Decedent's personal injury claim | $288,216 | 60% |
|   a) Loss of life and pain and suffering | $192,144 | 40% |
|   b) Wage loss | $ 72,054 | 15% |
|   c) Punitive damages | $ 24,018 | 5% |
| Mrs. Force's loss of consortium claim | $120,090 | 25% |
| Mrs. Force's wrongful death claim | $ 48,036 | 10% |
| Children's wrongful death claim | $ 24,018 | 5% |
| | $480,360 | 100% |

