1 F.3d 843
 1993 A.M.C. 2739
 Renate CRETAN, Widow of John Cretan; Nicole Cretan,
Daughter of John Cretan, Petitioners-Cross-Respondents,
v.
BETHLEHEM STEEL CORPORATION, Respondent-Cross-Petitioner,
and
Director, Office of Workers Compensation Programs, Respondent.
 Nos. 90-70589, 90-70634.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 14, 1993.
Decided July 28, 1993.
 
 Victoria Edises, Kazan, McClain, Edises & Simon, Oakland, CA, for petitioners-cross-respondents.
 Joshua T. Gillelan, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for the respondent; Bill Parrish, San Francisco, CA, Robert E. Babcock, Littler, Mendelson, Fastiff & Tichy, Portland, OR, for respondent-cross-petitioner.
 Petition for Review of an Order of the Benefits Review Board.
 Before: BROWNING, CHOY, and CANBY, Circuit Judges.
 CANBY, Circuit Judge.
 
 
 1
 We have before us a survivors' petition and an employer's cross-petition for review of a Benefits Review Board decision and order that resolved the survivors' claim for disability compensation and death benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Secs. 901-950. We have jurisdiction under 33 U.S.C. Sec. 921(c). We affirm in part and reverse in part.
 
 BACKGROUND
 
 2
 In 1942 and 1943, Bethlehem Steel Corporation (Bethlehem) employed John Cretan as an electrician engaged in the repair and construction of ships. John was exposed to asbestos on the job. Bethlehem was John's only maritime employer.
 
 
 3
 In January 1984, John learned he suffered from mesothelioma, a terminal asbestos-related disease. He died in February 1985. Before he died, John filed a timely claim for compensation and medical benefits under the Act. Bethlehem disputed liability. Two months after John's death his wife Renate and daughter Nicole claimed disability compensation as his survivors and death benefits in their own right. Bethlehem disputed those claims too.
 
 
 4
 Prior to his death, John had also brought a product liability action against a number of asbestos manufacturers. He settled his third-party claims in a series of agreements. Although neither Renate nor Nicole were parties to John's action, each settled her potential claims for his wrongful death against the manufacturers at that time. Renate also settled, in the same series of agreements, an action which she had filed seeking recovery for loss of consortium. The net proceeds from the settlements were approximately $333,489. One asbestos manufacturer also bought a $50,000 annuity on behalf of the family.
 
 
 5
 An administrative law judge (ALJ) tried the Cretans' LHWCA claims after John's death. The ALJ awarded disability compensation and medical benefits to Renate as John's widow. Renate and Nicole also received death benefit awards. The ALJ rejected Bethlehem's argument that section 33(g) of the Act, 33 U.S.C. Sec. 933(g), had terminated Bethlehem's liability to the Cretans because the family had failed to secure Bethlehem's written approval of the third-party settlements. The ALJ, however, permitted Bethlehem to offset a portion of the settlements against its statutory liability. Renate and Nicole had argued without success that the offset provision contained in section 33(f) of the Act, 33 U.S.C. Sec. 933(f), was inapplicable to them.
 
 
 6
 The Cretans and Bethlehem each appealed to the Board. In addition to resolving other objections to the ALJ's ruling, the Board agreed that section 33(g) was no bar to the LHWCA claims. The Board also agreed that Bethlehem was entitled to credit under section 33(f). The Board concluded, however, that Bethlehem was entitled to a credit in the amount of the family's aggregate net tort recovery. We review the Board's decision for "errors of law and adherence to the substantial evidence standard," Port of Portland v. Director, Office of Workers' Compensation Programs, 932 F.2d 836, 838 (9th Cir.1991), and we may affirm on any basis contained in the record. National Steel & Shipbuilding Co. v. United States Dep't of Labor, Office of Workers' Compensation Programs, 606 F.2d 875, 883 n. 4 (9th Cir.1979).
 
 DISCUSSION
 
 7
 The Cretans and Bethlehem each raise several challenges to the Board's ruling. The dispositive questions, however, are whether Renate and Nicole were subject to sections 33(f) and (g). We conclude that they were, and that they consequently cannot recover under the LHWCA.
 
 
 8
 Section 33 of the LHWCA establishes a claimant's right to seek recovery from third parties without fear of being categorically denied compensation or benefits under the Act. This right, however, is qualified by subsections (f) and (g), which complement each other in important respects. Section 33(f) provides:
 
 
 9
 If the person entitled to compensation institutes proceedings ... the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against [a] third person.
 
 
 10
 33 U.S.C. Sec. 933(f) (1988) (emphasis added). The import of this provision as a guard against double recovery is clear enough: the employer is entitled to set off against its liability any recovery that the person entitled to compensation received from third parties.
 
 Subsection (g) provides in relevant part:
 
 11
 If the person entitled to compensation ... enters into a settlement with a third person ... for an amount less than the compensation to which the person (or the person's representative) would be entitled under this chapter, the employer shall be liable for compensation ... only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed....
 
 
 12
 33 U.S.C. Sec. 933(g)(1). The purpose of this provision is to protect the employer against the employee's entering an inordinately low settlement, which would deprive the employer of a proper set-off under section 33(f).
 
 
 13
 As a result of the interplay of sections 33(f) and 33(g), the Cretans will necessarily be precluded from any compensation recovery if they fall within the reach of both subsections.[1] They do not dispute that they failed to obtain the written consent of Bethlehem to the settlement. As a result, if their third-party recovery was less than they are entitled to under LHWCA, section 33(g) precludes any LHWCA recovery from Bethlehem. On the other hand, if their third-party recovery exceeded their entitlement under LHWCA, Bethlehem would be entitled to a 100% set-off under section 33(f).
 
 
 14
 The Cretans contend, however, that they do not fall within the scope of either subsection because both expressly apply only to persons "entitled to compensation." They argue that they were not persons "entitled to compensation" when they settled their tort claims because John had not yet died. Our resolution of this issue is complicated by the fact that in the past the Director has given the term "person entitled to compensation" different meanings in sections 33(f) and 33(g), and each meaning has changed over time.
 
 
 15
 With regard to section 33(f), the Cretans urge that the fact that they were not "entitled to compensation" at the time of the recovery precludes Bethlehem from taking any set-off. The ALJ and the Board each rejected that argument, and later we adopted the Board's position in another appeal. See Force v. Director, Office of Workers' Compensation Programs, 938 F.2d 981, 984-985 (9th Cir.1991). In Force, we deferred to the Director's view at that time that a claimant's status as a "person entitled to compensation" need not be fixed at any particular moment. Even though the entitlement to compensation arose after the settlement, it did eventually arise and the employer was entitled to its set-off. Id.
 
 
 16
 The Cretans argue, however, that Force is implicitly overruled by the Supreme Court's recent decision in Estate of Cowart v. Nicklos Drilling Co., --- U.S. ----, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). We disagree.
 
 
 17
 Cowart arose under section 33(g). There the claimant had been informed that he was entitled to benefits under the LHWCA, but no order had been entered and no payments had been made by the employer. Id. at ----, 112 S.Ct. at 2592. At that point, the claimant entered into a settlement, lower than his potential LHWCA benefits, with a third party. See id. He did not obtain the prior written consent of his employer. Id. Before Cowart reached the Supreme Court, it had been the Director's position that a claimant who had not yet received a compensation order and had received no payments was not a "person entitled to compensation" for purposes of section 33(g). Id. at ----, 112 S.Ct. at 2593-94. The Director reversed his position in the Supreme Court, id. at ----, 112 S.Ct. at 2594, and the Court adopted the new position. The Court held that the term "person entitled to compensation" in section 33(g) was not limited to persons who had either obtained a compensation order or had received benefits. "Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated." Id. at ----, 112 S.Ct. at 2595. Accordingly, section 33(g) applied and the claimant was barred from recovering LHWCA benefits from his employer.
 
 
 18
 It is clear that the holding of Cowart does not dictate the outcome of our case. It does not rule on the question whether a claimant whose entitlement will mature upon a death that has not yet occurred is a "person entitled to compensation." Cowart does, however, contain language that in isolation appears to support the Cretans. In rejecting the view that Cowart did not become "entitled" until he obtained an order or a payment, the Court stated: "He became a person entitled to compensation at the moment his right to recovery vested, not when his employer admitted liability, an event even yet to happen." Id. at ----, 112 S.Ct. at 2595. The Court also stated that the normal meaning of entitlement is that "the person satisfies the prerequisites attached to the right." Id. The Cretans seize upon this language, and argue that their entitlement to compensation under the Act vested when John died. There is no reason, however, to assume that the Supreme Court had the present situation in mind when it uttered these dicta. The Court's point was that an entitlement did not have to be reduced to order or payment to be an entitlement. The Cretans give the vesting language a reading which is separated from the facts to which it is addressed. We decline to give the Supreme Court's statement a binding effect that there is no reason to believe the Court intended. See United States v. Ordonez, 737 F.2d 793, 803 n. 1 (9th Cir.1984) (discussing uses of dictum).
 
 
 19
 The Supreme Court's interpretation of section 33(g) in Cowart served the purposes of that subsection to " 'protect[ ] the employer against his employee's accepting too little for his cause of action against a third party.' " Cowart, --- U.S. at ----, 112 S.Ct. at 2598 (quoting Banks v. Chicago Grain Trimmers, 390 U.S. 459, 467, 88 S.Ct. 1140, 1145, 20 L.Ed.2d 30 (1968)). The construction urged by the Cretans, if applied to section 33(g), would defeat that purpose. If applied to section 33(f), the same construction would defeat the purpose of that subsection to protect the employer against double recovery. In light of the purposes of section 33(f), there is little sense in a distinction that turns on whether the death for which settlement is made has yet to occur. That consideration leads us to adhere to our ruling in Force that claimants who settle before the death that gives rise to LHWCA benefits are subject to the section 33(f) set-off; the entitlement does not have to have become vested at the time the settlement is made. " 'The only relevant question is whether the claimant is impermissibly recovering twice for the same injury, regardless of when such payments occur.' " Force, 938 F.2d at 984 (quoting Director's brief).
 
 
 20
 It is true that in Force, we deferred to the Director's interpretation of section 33(f), and that the Director now has changed positions and urges the same result as do the Cretans. For reasons already largely stated, we find the Director's new interpretation unreasonable. See Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124, 1136 (9th Cir.1988) (en banc) (substituting revised agency interpretation for an adverse precedent unnecessary if the substitution is unreasonable or inconsistent with the statute). If we were to adopt the Director's new view, relatives of claimants who are certain to die could negotiate settlements before the claimant's death and defeat the employer's offset. Furthermore, if the new view is extended to section 33(g), third-party tortfeasors could benefit from offering to desperate families inordinately small settlements the deficiencies of which the employer would have to make up. Those results would contradict the policy of employer protection that is evident on the face of sections 33(f) and (g). See Cowart, --- U.S. at ----, 112 S.Ct. at 2598.
 
 
 21
 On one point, we do agree with the Cretans and the Director regarding the effect of Cowart. The term "person entitled to compensation" must receive the same construction in sections 33(f) and 33(g), in accord with "the basic canon of statutory construction that identical terms within an Act bear the same meaning." Cowart, --- U.S. at ----, 112 S.Ct. at 2596. Indeed, one of the reasons that the Supreme Court rejected the narrow interpretation of "entitled" urged by Cowart was that it made no sense when applied equally to section 33(f). Id. Thus, in accordance with our ruling regarding section 33(f), we hold that the Cretans are persons "entitled to compensation" within the meaning of section 33(g). As we earlier explained, this holding, when combined with our ruling on section 33(f), defeats recovery for the Cretans under LHWCA: if their tort settlement was less than their statutory entitlement, they are barred by section 33(g); if the recovery exceeded their statutory entitlement, Bethlehem is entitled to set off its entire statutory liability under section 33(f).
 
 CONCLUSION
 
 22
 Because Renate and Nicole Cretan were persons "entitled to compensation," they were subject to the provisions of sections 33(f) and (g) of the LHWCA when they settled their tort claims with third parties. Together, the two provisions act as a complete bar to recovery from Bethlehem. Accordingly, we need not consider the petitioners' and cross-petitioner's other arguments.
 
 
 23
 That portion of the Board's decision that allows Bethlehem a total set-off of its liabilities pursuant to section 33(f) is affirmed. That part of the Board's decision holding the Cretans not to be subject to section 33(g) is reversed. The matter is remanded to the Board.
 
 
 24
 AFFIRMED IN PART; REVERSED IN PART; REMANDED. Costs in favor of Bethlehem.
 
 
 
 [1]
 The Cretans conceded this proposition at oral argument