Barscz v. Director, OWCP

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2006

(Argued: February 21, 2007                    Decided: May 18, 2007)

Docket No. 05-6420-ag

————————

ANNA BARSCZ (WIDOW OF CHARLES BARSCZ),

*Petitioner*,

—v.—

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS AND ELECTRIC BOAT
CORPORATION,

*Respondents*.

————————

B e f o r e : KEARSE, CABRANES, and KATZMANN, *Circuit Judges*.

————————

Petition for review of a decision and order of the Benefits Review Board allowing a credit for the entire amount of a settlement resolving various state law claims to be taken against a death benefits award pursuant to Section 3(e) of the Longshore and Harbor Workers' Compensation Act ("Longshoreman's Act"). We conclude that only the portion of the settlement related to state law death benefit claims may be credited against the death benefit award under the Longshoreman's Act and that on remand the party seeking to take the credit bears the burden of proof in establishing the allocation of the settlement. **REVERSED AND REMANDED.**

————————

APPEARING FOR PETITIONER: CAROLYN P. KELLY, O'Brien, Shafner, Stuart, Kelly & Morris, P.C., Groton, CT

APPEARING FOR RESPONDENTS: PETER D. QUAY, Murphy and Beane, New London, CT *for* Respondent Electric Boat Corporation

MATTHEW W. BOYLE, (Howard M. Radzely, Solicitor of Labor, Allen H. Feldman, Associate Solicitor, Mark A. Reinhalter, Counsel for Longshore *on the brief*), United States Department of Labor, Washington, D.C. *for* Respondent Director, Office of Workers' Compensation Programs

————————

KATZMANN, *Circuit Judge*:

This case calls on us in principal part to determine whether the entire amount of a state law settlement covering both disability and death benefits may be credited against an award of death benefits under the Longshore and Harbor Workers' Compensation Act ("Longshoreman's Act" or "Act"), 33 U.S.C. § 901 *et seq*. For the reasons that follow, we hold that it may not and that only the portion of the settlement funds directed toward state law death benefit claims may be credited. Accordingly we remand to the Benefits Review Board ("Board") for fact-finding regarding the allocation of petitioner's prior state settlement between death benefits and disability benefits. Further, we hold that on remand the burden of proof on the allocation of the state settlement between death and disability benefits lies with the party asserting the credit.

**I.**

Charles Barscz ("Mr. Barscz") worked at Electric Boat Corporation (a division of General

2

Dynamics Corporation) ("Electric Boat") in New London, Connecticut from 1950 through 1978. During his employment he was regularly exposed to asbestos and in November 1978 he was diagnosed with asbestosis. Mr. Barscz sought compensation for his injuries sustained while working for Electric Boat under both the Longshoreman's Act and under Connecticut workers' compensation laws.

On June 21, 1984, Mr. Barscz and his wife Anna Barscz ("Mrs. Barscz") entered into a settlement agreement ("Settlement") with Electric Boat and three insurance companies resolving all "past, present and future" state law claims relating to injuries suffered by Mr. Barscz during his employment with Electric Boat. The Settlement covered a variety of injuries to Mr. Barscz including: illness associated with exposure to asbestos; shoulder, back and neck injuries; and hearing loss. It also covered possible claims that Mrs. Barscz had or may have had "by virtue of any exposure which [Mr. Barscz] had to harmful irritants including but not limited to asbestos . . . ."

The insurers agreed to pay "to the claimant" $35,000, of which $5,000 covered the Barsczs' "attorney's fees." Pursuant to the terms of the Settlement, such payment would be accepted

> as a full and final settlement for all compensation for said injury, and for all results upon the claimant past, present and future, and for all claims past, present and future medical, surgical, hospital and incidental expenses and all compensation which may be due to anyone in case of the death of the claimant, to the end that the payment of such sum shall constitute a complete satisfaction of all claims due or to become due at any time in favor of anybody on account of the claimed injury, or on account of any condition in any way resulting out of the said injury, or on account of the death of the claimant.

The Settlement was approved by the Compensation Commissioner for the Second Compensation

3

District on June 27, 1984.

Mr. Barscz also sought compensation for his asbestosis under the Longshoreman's Act. In a decision dated December 3, 1984, administrative law judge Chester Shatz ("ALJ Shatz") determined that Mr. Barscz was permanently disabled as of November 24, 1978 and awarded him compensation for permanent total disability from that date forward. ALJ Shatz also determined that Mr. Barscz had suffered from a partial disability since at least 1974, which was when a chest x-ray first revealed to Electric Boat that Mr. Barscz had lung abnormalities including emphysema and pulmonary fibrosis. ALJ Shatz concluded that Electric Boat continued to employ Mr. Barscz despite that partial disability.

Because ALJ Shatz determined that Mr. Barscz had a partial disability when he contracted asbestosis, Electric Boat was able to obtain the benefit of section 8(f) of the Longshoreman's Act. Section 8(f) provides that an employer need only compensate an employee for two years when an employee with an "existing permanent partial disability" sustains a work-related injury that results in a permanent, total disability. 33 U.S.C. § 908(f)*; see also Sealand Terminals, Inc. v. Gasparic*, 7 F.3d 321, 323 (2d Cir. 1993) (per curiam). After the employer has compensated the employee for two years, the obligation to compensate the employee shifts to a special fund ("Special Fund") that is administered by the Secretary of Labor ("Secretary"). 33 U.S.C. § 908(f); *see also id.* § 944 (establishing the Special Fund); *Sealand Terminals*, 7 F.3d at 323.[1] Thus, ALJ Shatz ordered Electric Boat to compensate Mr. Barscz for 104 weeks; after 104

---

[1] The Special Fund is funded, in part, through annual assessments on covered employers by the Secretary. 33 U.S.C. § 944(c). The amount of that assessment is determined by several factors including the amount of payments under 8(f) that are attributable to the employer. *Id.* § 944(c)(2)(B).

4

weeks any "continuing benefits" would be paid by the Special Fund. The order did not mention the state settlement, which had already been approved, but it did provide that "[t]he Employer shall receive a credit for all amounts of compensation previously paid to the Claimant as a result of his pulmonary injury." Despite this statement, Electric Boat paid the entire 104 weeks of compensation without taking a credit for the Settlement. After that time the Special Fund made disability payments to Mr. Barscz until his death in September 1992. The Special Fund did not take any credit for the Settlement.

Following Mr. Barscz's death, Mrs. Barscz sought death benefits under the Longshoreman's Act. In an order dated June 9, 2004 ("June 9 Order"), administrative law judge Colleen A. Geraghty ("ALJ Geraghty") concluded that because Mr. Barscz's "work-related lung disease hastened [his] death," Mrs. Barscz was entitled to death benefits. Further, ALJ Geraghty determined that because the elements of 8(f) had been satisfied and Electric Boat had covered the first 104 weeks of Mr. Baracsz's disability claim, the Special Fund was responsible for paying Mrs. Barscz's death benefits.

Electric Boat moved for reconsideration of the June 9 Order, and for the first time, raised the existence of the Settlement. It argued that under section 3(e) of the Act ("Section 3(e)") $30,000 should be credited against the Special Fund's liability to Mrs. Barscz for death benefits. Section 3(e) provides that "[n]otwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law or [the Jones Act] shall be credited against any liability imposed by this chapter." 33 U.S.C. § 903(e).

5

ALJ Geraghty granted the motion and modified her original order to reflect a credit for the entire amount of the Settlement. She acknowledged that disability and death benefits are separate claims under the Act but noted that Mrs. Barscz had signed the Settlement, which specifically mentioned death benefits and concluded that "[u]nder these circumstances, it is appropriate to permit a credit against the death and survivor benefits due under the Act for the amounts received in settlement of the State claim for death or survivor benefits." Turning to the question of what portion of the Settlement to credit against the death benefits, ALJ Geraghty concluded that under prior Board decisions, because the Settlement resolved multiple claims and the record did not establish how the settlement funds were to be apportioned the "employers and the Special Fund are entitled to offset the entire amount paid to the parties under the State settlement." While conceding that this was a "harsh" result, she noted that claimants were in the best position "to ensure that the settlement agreement specifically apportions the amounts paid in settlement among the various claims."

The Director of the Office of Workers' Compensation Programs ("Director") appealed the ALJ's decision to the Board.[2] Because any death benefits would be paid by the Special Fund, the Director was an interested party in both Mrs. Barscz's original claim for death benefits and in Electric Boat's motion for reconsideration, but had not appeared in either proceeding. On appeal, the Director argued that the burden of proving the apportionment of the Settlement should have been placed on Electric Boat, not Mrs. Barscz, and that placing the burden on Mrs. Barscz was

---

[2] Responsibility for the administration of the Longshoreman's Act has been delegated to the Office of Workers' Compensation Programs. *See* 20 C.F.R. § 1.2. Under Department of Labor regulations the Director may be represented in front of the Board "[o]n any issues requiring representation" by attorneys designated by the Solicitor of Labor. *Id.* § 801.401.

6

inconsistent with the Supreme Court's holding in *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994), that under the Administrative Procedure Act ("APA") a proponent of a rule or order bears the burden of proof.

In a decision and order dated September 29, 2005, a two-member majority of the Board affirmed ALJ Geraghty's decision. The Board focused its analysis on the language of Section 3(e), which the Board read to provide that an amount paid to an employee for a state claim "offsets *any liability* the employer has under the [Longshoreman's] Act that is related to that same injury, disability or death." (emphasis in original). Based on that language, which it viewed as "quite expansive," the Board held that "in the absence of specific evidence of the apportionment of a state settlement . . . [the] employer is entitled to a credit for the amount of the state benefits paid." The Board's decision did not address the question of the burden of proof.

One member of the Board dissented. The dissent emphasized that Section 3(e) credit is given for "amounts paid for the *same injury, disability or death for which benefits are claimed*." (emphasis in original). In the dissent's view the use of the present tense of claim was highly significant and signaled that the credit could only be taken for state funds paid for the same injury or death currently being claimed under the Act. Based on that reading of the statute, because only death benefits were being claimed in the proceeding, only the portion of the Settlement that was intended to resolve state law death claims could be credited against the award to Mrs. Barscz. Turning to the allocation of the Settlement, the dissent agreed with the Director that the party asserting the credit bore the burden of proof.

Mrs. Barscz appealed the Board's decision on November 23, 2005. The Director moved to dismiss the appeal as untimely, but that motion was denied on July 19, 2006. *Barscz v. Dir.,*

7

*OWCP*, No. 05-6420 (2d Cir. July 19, 2006) (order denying motion to dismiss).

## II.

In reviewing a decision of the Board, our review is limited to whether the Board made any errors of law and whether the findings of fact of the ALJ are supported by substantial evidence. *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 143 (2d Cir. 2005). Our review of questions of law is *de novo*, while mixed questions of law and fact are reviewed either *de novo* or under the clearly erroneous standard "'depending on whether the question is predominately legal or factual.'" *Id.* (quoting from *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005)).

A.  *Does Section 3(e) Allow the Entire State Settlement To Be Credited Against the Death Benefits Award?*

The principal question presented is one of statutory interpretation: Whether Section 3(e) of the Longshoreman's Act allows the entire amount of the Settlement, which both parties concede covered both disability and death claims, to be credited against Mrs. Barscz's death benefits. We begin our inquiry with the text of the statute; if it is plain on its face, that is, if it is unambiguous, our inquiry usually ends. Whether statutory language is ambiguous is determined by "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Section 3(e) limits the credit that can be taken to "any amounts paid . . . for the same

8

injury, disability, or death for which benefits are claimed under this chapter." 33 U.S.C. § 903(e).[3] We view the words "are claimed" as critical in answering the question before us. When read together with the phrase "the same injury, disability, or death," the use of the present tense unambiguously indicates that only those injuries currently being claimed can be considered in applying the Section 3(e) credit.

The Board reads Section 3(e) differently, rejecting any distinction between the death benefits being claimed by Mrs. Barscz and the disability benefits that had previously been claimed by Mr. Barscz: "In isolation, it is true that claimant herein sought only death benefits. However, when decedent was alive, he *claimed*, and was awarded, disability benefits under the Act. The two cases are integral in that they are both related to the same injury . . . ." As the Board's own opinion makes evident, to sustain its interpretation of Section 3(e) the Board was compelled to read the words "are claimed" as including both the present tense and the past tense of the verb "claim" despite the fact that when given their plain meaning, the words refer *only* to the present tense. The Board's approach runs afoul of the rule that "Congress' use of a verb tense is significant in construing statutes," *United States v. Wilson*, 503 U.S. 329, 333 (1992). Its reading of Section 3(e) is therefore not supported by the language of the statute.

While our analysis could rest on the text of the statute alone, there are three other reasons we adopt our reading of Section 3(e) and not the one adopted by the Board. First, Section 3(e) lists "injury, disability, or death" in the disjunctive, signifying a distinction among the three. 33

---

[3] Though on its face Section 3(e) is limited in application to "employees" it has been applied in cases involving their survivors as well. *See Bouchard v. Gen. Dynamics Corp.*, 963 F.2d 541, 543 (2d Cir. 1992).

U.S.C. § 903(e). We have previously held that when disability and death are listed in the disjunctive in the Longshoreman's Act, they should be treated independently, even when the death and disability were caused by the same event. *See Int'l Mercantile Marine Co. v. Lowe*, 93 F.2d 663, 664-65 (2d Cir. 1938). In *Lowe*, we read section 14(m) of the Longshoreman's Act, which limited the "total compensation payable under this chapter for injury or death" to $7,500, 33 U.S.C. § 914(m) (repealed 1972), to separately limit to $7,500 compensation for injuries sustained in an accident and compensation in the form of death benefits for the same accident. *Id.* at 665. In rejecting the argument that the combined value of disability and death benefits for the same accident should be limited to $7,500, we noted that death and disability benefits are "separately provided for by separate sections of the act and accrue on different bases," and that the right of widows and next of kin to death benefits "is entirely separate and distinct from the compensation for disability allowed the employee." *Id.* at 664-65.[4] By lumping together Mrs. Barscz's death claim and Mr. Barscz's disability claim despite the use of the disjunctive, the Board's reading of Section 3(e) is in tension with the understanding of the Longshoreman's Act that guided our analysis in *Lowe*.

Second, our reading is supported by Section 3(e)'s legislative history. Congress passed Section 3(e) to overrule *United Brands Co. v. Melson*, 594 F.2d 1068 (5th Cir. 1979), a Fifth Circuit decision that read the Longshoreman's Act to allow an employee to recover for the same heart attack for which he had already received compensation in a state proceeding. In *Melson*, the employee sought compensation from different employers in the state and federal actions; the issue was not that one employer had been made to pay twice but that a single claimant had

---

[4] The Act also provides separately for medical treatment for injuries. 33 U.S.C. § 907.

recovered twice for the same injury. *Id.* at 1075. The Fifth Circuit began its discussion by noting that there was nothing in the Longshoreman's Act that allowed an employer to have its liability offset by compensation received for the same event under state law. *Id.* It then asked whether "any overriding policy" required that the federal award be reduced. *Id.* The Fifth Circuit reasoned that because the claimant was seeking compensation from two different employers, either the employer who was liable under the Longshoreman's Act or the claimant would receive "a windfall" and that "[u]ntil Congress is moved by this unusual situation, we think that the solution to this difficult problem is to allow the windfall of double recovery to reside with the injured worker." *Id.*

It was this windfall to claimants that Congress sought to overrule in adding Section 3(e) to the Longshoreman's Act. *See* 130 Cong. Rec. 8326 ("[T]he offset is intended to apply where the employee's non-Longshore claim is against an employer other than the one against whom he has filed a Longshore claim. Accordingly, the court's decision on this point in *Melson* . . . is overruled."); 130 Cong. Rec. 25905 (same); *see also E.P. Paup Co. v. Dir., OWCP*, 999 F.2d 1341, 1350 (9th Cir. 1993) (noting that Congress was attempting to overrule *Melson* and address the issue of double-recovery when it passed Section 3(e)).[5] The reading of Section 3(e) we adopt is consistent with Congress's purpose of limiting double recoveries for the same injury by the same claimant; the reading adopted by the Board would go beyond Congress's limited purpose of preventing double recovery by the *same* claimant and would decrease awards based on amounts

---

[5] While the legislative history also states that the "scope of the offset is to be broadly construed," that statement refers to the fact that it applies "not only to instances where the employee received State workers' compensation" but also to benefits received under other federal statutes. 130 Cong. Rec. 8326.

11

previously received by *other* claimants (*i.e.*, the deceased spouses of claimants seeking death benefits). In the instant case, the Board's interpretation would credit disability benefits recovered under state law by *Mr. Barscz* against *Mrs. Barscz's* federal death benefits. The Board's interpretation therefore exceeds Congress's purpose in overruling *Melson*, which was to preclude individual claimants from collecting the same benefits more than once.

Third, our reading is consistent with how other circuits have applied an analogous section of the Act which also addresses the problem of double-recovery. Section 33(f) provides that if a "person entitled to compensation" under the Longshoreman's Act recovers for the same "injury or death" against a third party, the employer may offset the net amount recovered from the third party against the amount it is required to pay. 33 U.S.C. § 933(f). In applying section 33(f), the circuits have held that where a third-party payment covers multiple parties, an employer can only apply a credit for that portion of the payment that goes to the claimant under the Longshoreman's Act. *See Force v. Dir., OWCP*, 938 F.2d 981, 985 (9th Cir. 1991); *see also Bundens v. J.E. Brenneman Co.*, 46 F.3d 292, 304-05 & n.27 (3rd Cir. 1995); *I.T.O. Corp. of Balt. v. Sellman*, 967 F.2d 971, 972-73 (4th Cir. 1992).[6] In its decision below, the Board distinguished cases applying section 33(f) because while section 33(f) limits its credit to the "person entitled to compensation," 33 U.S.C. § 933(f), such limiting language "is absent from Section 3(e)." But

---

[6] This reading of Section 3(e) is consistent with how other courts have applied section 14(j), which allows employers to be reimbursed from unpaid installments or payments for "advance payments of compensation." 33 U.S.C. § 914(j). In determining whether unpaid installments can be a source for reimbursement, other circuits have ensured that the credit is given against the funds going to the same claimant that received the advance payment. *See, e.g.*, *Cooper/T. Smith Stevedoring Co. v. Liuzza*, 293 F.3d 741, 748 (5th Cir. 2002) (distinguishing between disability payments made to widow as representative of decedent's estate and death benefits, which were paid directly to the widow).

12

the distinction the Board sought to draw is premised on its mistaken view that the use of the present tense of claim in Section 3(e) does not limit the credit to the specific injury, disability or death claimed. Because we think Congress's choice of verb tense is significant, we believe Section 3(e), like section 33(f), contains limiting language and thus cases applying section 33(f) are instructive.

In sum, we hold that Section 3(e) limits the credit that can be taken to amounts paid for the same injury, death or disability *currently* being claimed under the Longshoreman's Act.[7] The Board erred when it ruled the entire $30,000 of the Settlement could be credited against Mrs. Barscz's death benefits. While the only "injury, disability, or death" at issue in this case is Mr. Barscz's death, the Settlement covered both claims for Mr. Barscz's death and claims relating to Mr. Barscz's injury. In order to appropriately limit the credit to the death benefits being claimed, the Settlement amount must be apportioned between the amount paid to settle Mr. Barscz's injury and disability claims and the amount paid to settle Mrs. Barscz's future death claims. The text of the Settlement provides scant guidance on this issue and on remand it may be necessary to conduct further fact-finding. There remains the question of who bears the burden of proof on this apportionment. It is to that question that we now turn.

B.      *Who Bears the Burden of Proof on Allocation of the State Settlement?*

---

[7] We note that our reading of Section 3(e) is consistent with the position taken by the Director in his brief. We grant deference to the Director's interpretation of the Longshoreman's Act, *Fleischmann v. Dir., OWCP*, 137 F.3d 131, 136 (2d Cir. 1998), so long as the Director's interpretation is "reasonable and consistent with the statute," *Lockheed Martin Corp. v. Morganti*, 412 F.3d 407, 411 (2d Cir. 2005). The Director's reasonable interpretation of Section 3(e) "brings at least some added persuasive force to our conclusion." *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 136 (1997).

The adjudicative procedures for claims brought under the Longshoreman's Act are governed by the APA. 33 U.S.C. § 919(d) (hearings under the Longshoreman's Act conducted in accordance with APA); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 138 (1997). Under section 7(c) of the APA "the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). In *Rambo*, the Supreme Court explained that when an employer seeks to modify a compensation award due to a "change in conditions" under section 22 of the Longshoreman's Act, the employer is the proponent of the order seeking modification and thus section 7(c) of the APA dictates that the employer bears the burden of proof. *Rambo*, 521 U.S. at 139. We see no reason to treat a motion to modify an award by claiming a credit under Section 3(e) any differently than a motion to modify an award under section 22. We conclude that a party seeking to claim a credit under Section 3(e) is a proponent of the order and, under section 7(c) of the APA, that party bears the burden of proof in proving that a credit should be applied.[8]

It is beyond cavil that when a party bears the burden of proof, it bears that burden for each element of its claim. As we have explained, it is a necessary element of the Section 3(e) credit that the amount paid to the employee or their survivor be for the same injury claimed. Thus the burden of proof on the issue of allocation lies with the party seeking the credit, Electric Boat.[9]

Placing the burden of proof on the proponent of the Section 3(e) credit is consistent with

---

[8] To the extent that Section 3(e) can be understood to operate as an affirmative defense to liability under the Longshoreman's Act, we take note of the Supreme Court's observation in *Greenwich Colleries* that requiring a party asserting an affirmative defense to bear the burden of proof on that defense is consistent with section 7(c). 512 U.S. at 278.

[9] While the position we adopt is consistent with the views of the Director, this does not add any persuasive force to our conclusion. The Director is not charged with administering the APA and his views are not entitled to deference. *Rambo*, 521 U.S. at 137 n.9.

how courts have applied section 33(f), a section of the Longshoreman's Act which we have already noted is analogous to Section 3(e). *See Force*, 938 F.2d at 985; *I.T.O. Corp.*, 967 F.2d at 973. While the decisions under section 33(f) rely, not on the APA, but on the "overall humanitarian policy" of the Longshoreman's Act which requires that "all doubtful questions of fact be resolved in favor of the injured employee," *Force*, 938 F.2d at 985 (quotation marks omitted), we view their reasoning as providing additional support for our holding.

For the reasons stated above, we hold that in applying Section 3(e) the burden of proof lies on the party that seeks to apply the credit. On remand Electric Boat will bear the burden of proof on the allocation of the Settlement.

## III.

For the reasons set forth above, we hold that under Section 3(e) only the portion of the Settlement that covered Mrs. Barscz's state law death claims may be credited against her Longshoreman's Act death benefits. Further, we hold that on remand, the party claiming the Section 3(e) credit, Electric Boat, bears the burden of proof in establishing the apportionment of the Settlement. The September 29, 2005 decision and order of the Board is **REVERSED**, and we **REMAND** for further proceedings consistent with this Opinion.