162 F.3d 813
 1999 A.M.C. 1133
 BROWN & ROOT, INCORPORATED; Highlands Insurance Company, Petitioners,
v.
Frances SAIN, Widow of Willie Joe Sain; Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 98-1132.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 26, 1998.
Decided Dec. 18, 1998.
 
 ARGUED: Patrick John Hanna, Rabalais, Hanna & Hebert, Lafayette, Louisiana, for Petitioners. Gary Richard West, Patten, Wornom & Watkins, L.C., Newport News, Virginia, for Respondent Sain; Samuel Jay Oshinsky, for Longshore, Office of the Solicitor, United States Department of Labor, Washington, D.C., for Respondent Director.: ON BRIEFS: Marvin Krislov, Deputy Solicitor for National Operations, Carol A. De Deo, Associate Solicitor for Employment Benefits, Office of the Solicitor, United States Department of Labor, Washington, D.C., for Respondent Director.
 Before WIDENER, LUTTIG, and WILLIAMS, Circuit Judges.
 Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge WIDENER and Judge WILLIAMS joined.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Petitioners Brown & Root, Incorporated and Highlands Insurance Company challenge the Benefits Review Board's decision upholding the award of benefits to respondent Frances Sain under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950, following the death of her husband from an asbestos-related disease. We affirm.
 
 I.
 
 2
 From 1951 to 1976, Willie Joe Sain ("Sain") worked as an electrician for various maritime employers in and around Newport News, Virginia. From May 5, 1975, to September 17, 1976, Sain was so employed by petitioner Brown & Root, Incorporated ("Brown &Root"). During the course of Sain's employment by Brown & Root, as during the course of his employment by at least two prior maritime employers, he was exposed to asbestos. On March 14, 1988, Sain learned that he had asbestosis, a progressive scarring disease of the lungs caused by exposure to asbestos. Sain suffered from minor shortness of breath, but continued to work full-time until his retirement on September 24, 1993, and part-time thereafter.
 
 
 3
 In the spring of 1994, Sain began to suffer from severe shortness of breath and chest discomfort, and, on June 6, 1994, he was diagnosed with advanced mesothelioma, a rapidly terminal form of lung cancer caused by exposure to asbestos. Sain died on November 26,1994.
 
 
 4
 After his original diagnosis with asbestosis in 1988, Sain filed a Longshore Harbor Workers' Compensation Act ("LHWCA") claim, which he subsequently abandoned. Sain also filed a civil suit against a number of asbestos manufacturers and distributors, later settling his claims against several of the third-party defendants. Between March 14, 1988 (the date of his diagnosis with asbestosis), and June 6, 1994 (the date of his diagnosis with mesothelioma), Sain and his wife, respondent Frances Sain ("respondent"), reached six settlements ("the pre-1994 settlements"), totaling $57,100.00 gross and $32,937.06 net. Between June 6, 1994, and November 26, 1994 (the date of his death), Sain alone reached two further settlements ("the 1994 settlements"), totaling $35,288.00 gross and $25,176.70 net. Brown & Root received notice of all of these settlements, but did not consent to any of them.
 
 
 5
 Upon Sain's death, respondent commenced this action under the LHWCA, seeking disability compensation and medical expenses on Sain's behalf and death benefits and funeral expenses on her own behalf. The administrative law judge ("ALJ") found that Brown & Root was solely liable as the last maritime employer to expose Sain to asbestos. The ALJ then awarded approximately $7,084.00 plus interest in compensation and $38,613.53 plus interest in medical expenses on Sain's behalf, but offset this award by $25,176.70, the net amount of the 1994 settlements. The ALJ also awarded $419.08 per week in death benefits and $3,000 in funeral expenses on respondent's own behalf. The Benefits Review Board ("Board") affirmed the award in all respects. Brown & Root and its insurer, Highlands Insurance Company, now bring this appeal.
 
 II.
 
 6
 Petitioners first make two essentially alternative arguments that the ALJ improperly calculated Brown & Root's liability to respondent under section 33 of the LHWCA. First, petitioners contend that, assuming that Sain became a "person entitled to compensation" when he developed mesothelioma in 1994, the ALJ erroneously failed to apply the forfeiture provision in section 33(g), which prohibits a claimant from obtaining benefits if he reached third-party settlements, without his employer's consent, totaling less than the amount of his claim for compensation against the employer. Second, petitioners contend that, assuming that Sain or respondent became a "person entitled to compensation" at some point before Sain developed mesothelioma in 1994, the ALJ incorrectly applied the offset provision in section 33(f), which requires all third-party settlements to be offset against the amount of a claim for benefits against the employer. Because both of these contentions depend on the question when Sain became a "person entitled to compensation" for purposes of section 33, we begin with that question before turning to the application of the forfeiture and offset provisions.
 
 A.
 
 7
 The ALJ found that Sain became a "person entitled to compensation" on June 6, 1994, the date he was diagnosed with mesothelioma. Petitioners suggest two alternatives to this finding. First, petitioners contend that Sain became a "person entitled to compensation" in 1976, when he was last exposed to asbestos; second, they contend that he became a "person entitled to compensation" in 1988, when he learned he had developed asbestosis. We address each of these arguments in turn.
 
 
 8
 First, petitioners argue that Sain became a "person entitled to compensation" in 1976, when he was last exposed to asbestos. Specifically, petitioners rely on the Supreme Court's decision in Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). In Estate of Cowart, the Court held that a claimant became a "person entitled to compensation" not at the moment when his employer admitted liability, but rather "at the moment his right to recovery vested." Id. at 477, 112 S.Ct. 2589. On the basis of this holding, petitioners contend that Sain's right to recovery "vested" at the moment at which he suffered the "injurious exposure" to asbestos that gave rise to his subsequent asbestosis and mesothelioma.
 
 
 9
 Petitioners' argument fails because the LHWCA provides a right of recovery not for mere exposure to a potentially harmful stimulus, but rather only for an actual disability arising from such exposure. Under the LHWCA, a claimant is entitled to compensation for either disability or death resulting from an injury occurring in the course of maritime employment. See 33 U.S.C. § 903(a). In the case of a latent occupational disease such as asbestosis, the time of "injury" has repeatedly been defined as the time at which the claimant becomes aware of his disease and of the relationship between his disease, his employment, and a qualifying disability. See, e.g., Harris v. Todd Pac. Shipyards Corp., 30 B.R.B.S. 5, 9-10 (1996) (en banc) (specifically rejecting argument that time of injury in asbestos claim was time at which claimant was exposed to asbestos). Although Sain was exposed to asbestos in 1976, he suffered no injury even arguably giving rise to a claim for compensation under the LHWCA until he learned he had developed asbestosis in 1988. In the absence of any such injury, claimant's right to recovery could not possibly have "vested," and thus claimant could not have been a "person entitled to compensation," in 1976.
 
 
 10
 Second, petitioners argue, apparently for the first time on appeal, that Sain became a "person entitled to compensation" in 1988, when he learned he had developed asbestosis. In doing so, petitioners cite the Supreme Court's recent decision in Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997). In Rambo, the Court considered the case of a claimant who had suffered various injuries in maritime employment but was subsequently able to obtain employment with a higher salary. The Court held that, despite the absence of any evidence of a present loss in earning capacity, the claimant could nevertheless be entitled to nominal compensation:
 
 
 11
 We ... hold that a worker is entitled to nominal compensation when his work-related injury has not diminished his present wage-earning capacity under current circumstances, but there is a significant potential that the injury will cause diminished capacity under future conditions.
 
 
 12
 Id. at ----, 117 S.Ct. at 1963.
 
 
 13
 Petitioners contend that, although Sain suffered no loss in earning capacity as a result of his diagnosis with asbestosis, Sain nevertheless was a "person entitled to compensation" under the reasoning of Rambo. This argument, however, is unavailing for two reasons. First, the mere fact that Sain may have been a "person entitled to compensation" for asbestosis as early as 1988 is simply irrelevant to the distinct question whether Sain was a "person entitled to compensation" for mesothelioma. Although both asbestosis and mesothelioma are caused by exposure to asbestos, they are distinct diseases giving rise to distinct disabilities (albeit with similar symptoms), for which Sain could, and apparently did, bring separate LHWCA claims. See, e.g., Clark v. Newport News Shipbuilding and Dry Dock Co., 29 B.R.B.S. 268, 270 (1995) (discussing claimant's separate claims for asbestosis and mesothelioma); cf. Patrick v. Newport News Shipbuilding and Dry Dock Co., 15 B.R.B.S. 274, 275 n. 1 (1983) (recognizing that asbestosis and mesothelioma are "separate disease process[es]").
 
 
 14
 Second, even if the fact that Sain was a "person entitled to compensation" for asbestosis was relevant to whether he was a "person entitled to compensation" for mesothelioma, petitioners fail to make any showing that, at the time of the diagnosis of Sain's asbestosis, there was a "significant potential that the injury will cause diminished [wage-earning] capacity under future conditions," as is required by Rambo. To the contrary, at the time of Sain's diagnosis, Sain was suffering only from minor shortness of breath,[1] and indeed was able to continue in full-time employment until his retirement in 1993. Because Sain was thus not entitled even to nominal compensation at the time of his diagnosis with asbestosis, he could not have been a "person entitled to compensation," even for asbestosis, at that time. Therefore, we agree with the ALJ and the Board that Sain became a "person entitled to compensation" on June 6, 1994, the date of his diagnosis with mesothelioma.
 
 B.
 
 15
 Turning to the merits of petitioners' claims, petitioners first argue that the ALJ erroneously failed to apply the forfeiture provision in section 33(g) of the LHWCA. In relevant part, section 33(g) reads as follows:
 
 
 16
 (1) If the person entitled to compensation (or the person's representative) enters into a settlement with a third person referred to in subsection (a) of this section for an amount less than the compensation to which the person (or the person's representative) would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation (or the person's representative). The approval shall be made on a form provided by the Secretary and shall be filed in the office of the deputy commissioner within thirty days after the settlement is entered into.
 
 
 17
 (2) If no written approval of the settlement is obtained and filed as required by paragraph (1), or if the employee fails to notify the employer of any settlement obtained from or judgment rendered against a third person, all rights to compensation and medical benefits under this chapter shall be terminated, regardless of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits under this chapter.
 
 
 18
 33 U.S.C. § 933(g). The parties do not dispute that Sain provided Brown & Root with notice of all of his settlements, as is required by subsection (2). The question in dispute, then, is whether Sain, subsequent to becoming a "person entitled to compensation" upon his diagnosis with mesothelioma on June 6, 1994,[2] entered into settlements that, in the aggregate,[3] amount to less than the compensation to which he is entitled under the LHWCA. If so, because Sain failed to obtain consent from Brown & Root for such settlements, Sain would have forfeited "all rights to compensation and medical benefits" under subsection (2).
 
 
 19
 The ALJ concluded that the forfeiture provision of section 33(g) was inapplicable because the gross amount of the third-party settlements entered into after June 6, 1994 ($35,288), exceeds the amount of disability compensation, excluding medical benefits, to which Sain was entitled under the LHWCA (approximately $7,084.00 plus interest). Petitioners challenge this finding on two grounds. First, they argue that the ALJ erred by considering the gross amount of the third-party settlements, rather than the net amount. Second, they argue that the ALJ erred by considering only the amount of disability compensation, and not the aggregate amount of disability compensation and medical benefits, to which Sain was entitled. Therefore, they conclude, because the net amount of the third-party settlements ($25,176.70) is less than the aggregate amount of disability compensation and medical benefits to which Sain was entitled (approximately $45,697.53 plus interest), the forfeiture provision of section 33(g) should apply.
 
 
 20
 Neither of petitioners' challenges finds support in the text of section 33(g). First, petitioners' argument that the net, rather than gross, amount of the third-party settlements should be used in the section 33(g) calculation is belied by the fact that section 33(g) refers only to the "amount" of the settlements, whereas section 33(f), which allows employers to use third-party settlements to offset claims for benefits, refers specifically to the "net amount" of such settlements. See infra at 819. Because the Congress failed to specify that the "net amount" of settlements should be used in section 33(g), as under the neighboring section 33(f), we apply, as did the only other circuit to have considered the issue, the established canon of construction that inclusion of particular language in one section of a statute suggests that the omission of such language in another section was intentional. See Bundens v. J.E. Brenneman Co., 46 F.3d 292, 305-06 (3d Cir.1995); cf. Harris, 30 B.R.B.S. at 16 (adopting reasoning of Bundens ). Our conclusion is buttressed by the fact that, when amending section 33 in 1984, the Congress included the phrase "net amount" in section 33(f), but not in section 33(g), despite the fact that it substantially rewrote section 33(g) at the same time. See id.
 
 
 21
 Petitioner's argument that the aggregate amount of disability compensation and medical benefits to which Sain was entitled, not just the amount of disability compensation, should be taken into account in the section 33(g) calculation fails for a similar reason: section 33(g)(1) refers only to "compensation," whereas section 33(g)(2), which discusses forfeiture in the event of failure to obtain consent, refers more generally to "compensation and medical benefits." See supra at 817 (emphasis added). Again, we apply, as did the only other circuit to have considered the issue, the canon of construction that inclusion of particular language in one section of a statute suggests that the omission of such language in another section was intentional. See Bethlehem Steel Corp. v. Mobley, 920 F.2d 558, 560-61 (9th Cir.1990). In this regard, we note that disability compensation and medical expenses are treated as distinct concepts elsewhere in the LHWCA. See 33 U.S.C. § 907 (medical expenses), id. § 908 (disability compensation).[4]
 
 
 22
 Petitioners assert that their reading of section 33(g)(1) is supported by a passing reference of the Supreme Court in Estate of Cowart, in which the Court said that an employer was not required to give consent whenever "the employee settles for an amount greater than or equal to the employer's total liability. " Estate of Cowart, 505 U.S. at 482, 112 S.Ct. 2589 (emphasis added). Petitioners argue that the Court's reference to "total liability" should be read to include medical expenses, as well as disability compensation. In view of the plain statutory language, however, we decline to adopt such a reading. Indeed, earlier in its opinion, the Court referred to the employer's "total disability liability," from which it specifically excluded the employer's liability for future medical benefits. See id. at 474, 112 S.Ct. 2589. This reference suggests that the Court's subsequent reference to "total liability" could be plausibly read simply to refer to the employer's total liability for disability compensation, and not for medical expenses as well.
 
 
 23
 We conclude that the ALJ properly weighed the gross amount of the 1994 settlements with the amount of disability compensation to which Sain was entitled, and properly found that the amount of the settlements was the greater. Therefore, because Sain provided notice of the settlements to Brown & Root, we affirm the Board's ruling that the forfeiture provision of section 33(g) was inapplicable.
 
 C.
 
 24
 Petitioners next argue that the ALJ incorrectly applied the offset provision in section 33(f) of the LHWCA. Section 33(f) reads as follows:
 
 
 25
 If the person entitled to compensation institutes proceedings within the period prescribed in subsection (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person. Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred by such person in respect to such proceedings (including reasonable attorneys' fees).
 
 
 26
 33 U.S.C. § 933(f). The parties agree that the ALJ correctly used the net amount of the 1994 settlements as offset against the disability compensation and medical benefits awarded on Sain's behalf. However, petitioners contend that the ALJ should also have used the net amount of the pre-1994 settlements as offset either against the disability compensation and medical benefits awarded on Sain's behalf, or against the death benefits and funeral expenses awarded on respondent's own behalf.
 
 
 27
 Petitioners' argument rests on their ability to show that either Sain or respondent was a "person entitled to compensation" under section 33(f) at the time of the pre-1994 settlements. As noted above, we agree with the ALJ and the Board that Sain did not become a "person entitled to compensation" until June 6, 1994, the date of his diagnosis with mesothelioma. See supra at 817. As for respondent, petitioners concede that respondent became a "person entitled to compensation" for purposes of section 33(g) only upon Sain's death on November 26, 1994. See id. at 817-18 n. 2. Petitioners contend, however, that respondent became a "person entitled to compensation" for purposes of section 33(f) at the time of the pre-1994 settlements, because the Congress' purpose in enacting section 33(f) was to deter claimants from obtaining double recovery: that is, recovery both from third parties by means of settlements and from employers by means of the LHWCA. See Cretan v. Bethlehem Steel Corp., 1 F.3d 843, 846-48 (9th Cir.1993); Force v. Director, 938 F.2d 981, 984-85 (9th Cir.1991).[5]
 
 
 28
 The Supreme Court has given conflicting signals as to whether the phrase "person entitled to compensation" should be given a broader reading in some circumstances under section 33(f) than under section 33(g). Compare Ingalls Shipbuilding, 519 U.S. at 260-61, 117 S.Ct. 796 ("[Whether]the definition we today give to 'person entitled to compensation' under § 33(g) applies without qualification to § 33(f) as well ... is a question we have yet to decide, and is one we leave for another day."), with Estate of Cowart, 505 U.S. at 479, 112 S.Ct. 2589 ("[A]dopt[ing] differing interpretations of the identical language in §§ 33(f) and 33(g) ...is contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning."). We need not resolve the question here, however, because we hold that, assuming arguendo that respondent (or, for that matter, Sain) was a "person entitled to compensation" even at the time of the pre-1994 settlements, the ALJ correctly did not use those settlements as offset.
 
 
 29
 It is squarely established in this circuit, as in others, that, when third-party settlements are not apportioned among multiple plaintiffs, the employer bears the burden of demonstrating what portion of the settlements should be apportioned to the claimant against whom the employer seeks a section 33(f) offset. See I.T.O. Corp. of Baltimore v. Sellman, 967 F.2d 971, 972-73 (4th Cir.1992); accord Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor, 65 F.3d 460, 465 (5th Cir.1995), aff'd on other grounds, 519 U.S. at 248, 117 S.Ct. 796, 136 L.Ed.2d 736; Force, 938 F.2d at 985. In this case, petitioners fail to meet their burden. Petitioners point to no evidence indicating what portion of the pre-1994 settlements should be apportioned to respondent and what portion to Sain, and we find no such evidence in the record. Accordingly, we agree with the Board that no portion of the pre-1994 settlements can be used as offset against either respondent's or Sain's claims, and affirm the Board's ruling that only the 1994 settlements can be used as offset under section 33(f).[6]
 
 III.
 
 30
 Finally, petitioners contend that the ALJ erroneously failed to apply the special fund provision of section 8(f) of the LHWCA, which limits an employer's liability for death benefits to two years in cases in which an employee suffered from a pre-existing permanent partial disability that contributed to his death. See 33 U.S.C. § 908(f). Petitioners assert that the ALJ applied the incorrect legal standard in evaluating their claim for section 8(f) relief against respondent's claim for death benefits, and that the ALJ erroneously found that Sain's preexisting conditions did not contribute to his death. We evaluate each of these claims in turn.
 
 
 31
 First, petitioners contend that the ALJ applied the incorrect legal standard under section 8(f). In order to obtain relief under section 8(f) against a death benefits claim, an employer must establish three things: first, that the employee had an existing permanent partial disability; second, that the disability was manifest to the employer; and third, that the disability contributed to the employee's death. See, e.g., Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor v. Newport News Shipbuilding and Dry Dock Co., 676 F.2d 110, 114 (4th Cir.1982). Regarding the first prong, the parties agree that Sain suffered from several pre-existing conditions at the time he developed mesothelioma: namely, chronic obstructive pulmonary disease, arteriosclerotic heart disease, and asbestosis. Regarding the second prong, this circuit has held that the manifestation requirement does not apply in cases involving occupational diseases that develop after retirement, as did Sain's mesothelioma. See Newport News Shipbuilding and Dry Dock Co. v. Harris, 934 F.2d 548, 553 (4th Cir.1991). Regarding the third prong, the parties agree that the appropriate standard for determining whether a pre-existing condition "contributed" to the employee's death in a case such as this one, in which the work-related injury could have produced death by itself, is whether the pre-existing condition "hastened" the death. See, e.g., Independent Stevedore Co. v. O'Leary, 357 F.2d 812, 815 (9th Cir.1966); cf. Shuff v. Cedar Coal Co., 967 F.2d 977, 979-80 (4th Cir.1992) (applying "hastening" standard to Black Lung Act claim).
 
 
 32
 Petitioners contend that the ALJ articulated a more restrictive standard than the "hastening" standard in determining whether Sain's pre-existing conditions contributed to its death. In articulating the standard for contribution, the ALJ said that "Brown[ & Root] has the burden of proving that [d]ecedent's mesothelioma was not sufficient to cause his death in November 1994, or in the alternative, of proving that the pre-existing conditions were necessary for [d]ecedent to die in November 1994. " Joint Appendix at 892 (emphases added). We conclude that the ALJ's statement of the standard for contribution is wholly consistent with the "hastening" standard: the ALJ merely required Brown & Root to prove that decedent would not have died at the time he did--namely, in November 1994--if he had not suffered from his pre-existing conditions. Therefore, we reject petitioners' challenge, and hold that the ALJ applied the proper legal standard in evaluating petitioners' section 8(f) claim.
 
 
 33
 Second, petitioners assert that the ALJ erroneously found that Sain's pre-existing conditions did not contribute to his death. The Board affirmed the ALJ's finding, and we agree with the Board that the ALJ's finding was supported by substantial evidence in the record as a whole. See 33 U.S.C. § 921(b)(3). Specifically, we agree with the Board that the ALJ properly credited the testimony of Dr. David Schwartz, a pulmonary specialist who diagnosed mesothelioma as the sole cause of Sain's death, together with evidence from the autopsy reports, over the conflicting testimony of Dr. James Reid, a non-specialist in-house physician at the Newport News shipyard, and that the ALJ's failure to consider an unelaborated notation on Sain's death certificate was harmless error. Accordingly, we uphold the ALJ's finding that Sain's pre-existing conditions did not contribute to his death, and affirm the Board's ruling that the special fund provision of section 8(f) was inapplicable against respondent's claim for death benefits.[7]
 
 CONCLUSION
 
 34
 The judgment of the Benefits Review Board is affirmed.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 One of Sain's doctors did note that Sain's asbestosis would likely "get worse with the passage of time." Joint Appendix at 564 (letter by Dr. Gerrit W.H. Schepers). Similarly, Sain himself expressed concern that his symptoms might worsen "four or five years down the road or maybe next year." Id. at 253 (testimony of Willie Joe Sain). For purposes of Rambo, however, petitioner must demonstrate that Sain was likely to suffer not just a mere worsening of symptoms, but a decrease in wage-earning capacity. Petitioners fail to make such a showing
 
 
 [2]
 Petitioners acknowledge that section 33(g) cannot apply against the death benefits and funeral expenses awarded to respondent on her own behalf, because respondent, unlike Sain, became a "person entitled to compensation" for purposes of section 33(g) only upon Sain's death on November 26, 1994. See Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, Dept. of Labor, 519 U.S. 248, 261-62, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997)
 Further, petitioners concede that, were we to conclude that Sain became a "person entitled to compensation" prior to 1994, section 33(g) could not apply in this case at all, because the aggregate amount of the pre-1994 and 1994 settlements would easily exceed the amount of compensation to which Sain was entitled, no matter how either of those amounts was calculated.
 
 
 [3]
 Petitioners do not contest that, for purposes of the calculation under section 33(g)(1), all third-party settlements should be considered in the aggregate, rather than individually. See Harris, 30 B.R.B.S. at 15-16. Even if the third-party settlements were considered individually, however, our analysis would be unaffected, because the gross value of each of the post-1994 settlements exceeds the amount of disability compensation to which Sain was entitled
 
 
 [4]
 At least one court has interpreted "compensation" in a different LHWCA provision to mean both disability compensation and medical benefits. See Lazarus v. Chevron USA, Inc., 958 F.2d 1297, 1299-1303(5th Cir.1992) (thus interpreting section 18(a), the provision for accelerated enforcement of LHWCA awards). This case, however, is distinguishable from Lazarus because of the close proximity of the phrases "compensation" and "compensation and medical benefits" in the provision we are interpreting
 
 
 [5]
 The likelihood of double recovery is particularly great in a case such as this one, in which a widow seeking death benefits reached third-party settlements prior to, and in anticipation of, her husband's death
 
 
 [6]
 No apportionment issue arises with regard to the 1994 settlements because they were entered into by Sain alone. See supra at 815
 
 
 [7]
 Because we uphold the ALJ's finding that Sain's pre-existing conditions did not hasten his death, we need not reach the question whether, as the Director asserts, a de minimis hastening of death is insufficient to establish an employer's entitlement to section 8(f) relief