**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-2418

NEWPORT NEWS SHIPBUILDING AND DRY DOCK
COMPANY,

Petitioner,

versus

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS; WILLIE M. RICHARDSON,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(05-0151)

Argued: May 22, 2007                    Decided: August 14, 2007

Before WILLIAMS, Chief Judge, GREGORY, Circuit Judge, and Benson E.
LEGG, Chief United States District Judge for the District of
Maryland, sitting by designation.

Petition for review denied; Board order affirmed by unpublished
opinion. Judge Gregory wrote the opinion, in which Chief Judge
Williams and Judge Legg joined.

**ARGUED:** Jonathan Henry Walker, MASON, MASON, WALKER & HEDRICK,
P.C., Newport News, Virginia, for Petitioner. Matthew W. Boyle,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.; Matthew Harley
Kraft, RUTTER & MILLS, L.L.P., Norfolk, Virginia, for Respondents.
**ON BRIEF:** Howard M. Radzely, Solicitor of Labor, Allen H. Feldman,
Associate Solicitor, Mark A. Reinhalter, Counsel for Longshore,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent

Director, Office of Workers' Compensation Programs.   Jennifer W.
Vincent, PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C., Newport News,
Virginia, for Respondent Willie M. Richardson.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Newport News Shipbuilding and Dry Dock Company ("Newport News") contests a benefits award granted, under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950, ("the Act"), to Willie M. Richardson by the Workers' Compensation Benefits Review Board ("Board"). Newport News argues that the Board should not have approved the Administrative Law Judge's ("ALJ") award of benefits for Richardson's chronic obstructive pulmonary disorder ("COPD") because Section 33(g) of the Act prohibits benefits for a person who has previously settled, without employer approval, with a third party for injuries related to the same disability. Newport News claims that Richardson's unapproved settlement for asbestosis in 1999 should bar his current claim for COPD benefits because he suffers from only one lung-impairing disability. For the reasons stated below, we deny the petition and affirm the award of benefits.

I.

Richardson worked at Newport News as a welder from 1968 until late 1998. Throughout his career, he was exposed to fumes and dust from the several different types of welding metals. He also used asbestos material to protect himself while welding until the early eighties. For four years of his career, he welded in a shipyard that was filled with toxic fumes from a banned paint that was

3

applied to and then removed from a ship.  Throughout the eighties and nineties, Richardson had difficulty breathing when performing light activity, but in late 1998 his dyspnea increased to the point where he had to leave work.  Richardson also has a history of childhood asthma.

Richardson applied for  disability benefits on February 16, 1995.  In his first application, he claimed that he suffered from asbestos-related lung disease contracted from his inhaling asbestos fibers at work.  No action was taken on his application.  On February 9, 1999, Richardson filed a second application for benefits, claiming that he suffered from COPD, a condition that he contracted by inhaling welding dust and paint fumes at work.  Also in 1999 Richardson negotiated settlements of $112 and $6,500, from Forty-Eight Insulations and Babcock & Wilcox respectively, for asbestos-related illness.  Richardson did not receive written approval from Newport News before reaching those settlements.

Richardson's two disability claims were consolidated for hearing on July 18, 2000.  At the hearing, the ALJ granted Richardson's motion to amend his claim to seek benefits related only to his COPD and ask for medical monitoring related to asbestos exposure.  Richardson's doctors had determined that he did not suffer from asbestosis, but they wanted to make sure that it would not develop in the future.  After the hearing, the ALJ allowed the parties to conduct more depositions of experts and enter them into

4

evidence.  In an order dated January 30, 2003, the ALJ ruled that Section 33(g) of the Act barred Richardson from recovery because he suffered from a lung disability that included asbestosis, the very disability that was the subject of the earlier, unapproved third-party settlements:

> I find that the preponderance of the evidence establishes that the Claimant suffers from asbestosis, asbestos related pleural plaques, and has both restrictive and obstructive lung impairment.  . . . I also find that all of these conditions contribute at least to some degree to the Claimant's impaired lung functioning and combine with his pre-existing asthma.  The result is that the Claimant suffers from a single disability caused by his simultaneous exposure to asbestos fibers, smoke, dust, and fumes while welding.

J.A. 885.  Upon finding his claim barred, Richardson appealed to the Board.

The Board reversed the order of the ALJ based on its interpretation of Chavez v. Todd Shipyards Corp., 139 F.3d 1309 (9th Cir. 1998).  In Chavez the Ninth Circuit deferred to the Benefits Review Board Director's understanding of the third-party settlement rule, which provided that a claimant who has settled with a third party on the basis of injuries produced by one disability will not be barred from collecting benefits from the employer on the basis of a second, separate disability.  Id. at 1312.  The Board instructed the ALJ in its order:

> If, after reviewing the medical evidence in light of Chavez, the administrative law judge again finds that the claimant is disabled by both asbestosis and COPD, Section 33(g) cannot bar the claim because, under the aggravation rule, COPD is considered to be the disabling, compensable

5

> condition and therefore not the same disability for which claimant settled his third party claims.

J.A. 893.  With this instruction, the ALJ reviewed the evidence, found that Richardson suffered from COPD as well as asbestosis, and awarded him permanent partial disability benefits.  (J.A. 912.) Newport News asks us to reverse the Board's affirmation of the ALJ's second order.

## II.

This Court reviews the Board's conclusions of law de novo. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988).  We will uphold the ALJ's findings of fact if they are supported by substantial evidence.  Id. at 543.  Therefore, in evaluating Newport News's appeal, we must confront two questions. We must first ask if the Board interpreted the Act correctly.  Then we must decide if substantial evidence supports the ALJ's findings of fact.

## A.

The Act states that employers shall be liable to claimants for "compensation for either disability or death resulting from an injury occurring in the course of maritime employment."  Brown & Root, Inc. v. Sain, 162 F.3d 813, 816 (4th Cir. 1998); see 33 U.S.C. § 903(a).  The Act defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."  33 U.S.C. §

902(10). It defines <u>injury</u> as "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury." 33 U.S.C. § 902(2). The Supreme Court has defined "person entitled to compensation" in Section 33(g) as a person who would be eligible for benefits whether or not he or she is currently receiving benefits. <u>Estate of Cowart v. Nicklos Drilling Co.</u>, 505 U.S. 469, 477 (1992).

Section 33(g) of the Act requires claimants to secure written approval from their employers when they negotiate settlements with third parties and when the basis for the settlement is the disability for which the employer might be liable under the Act. If claimants do not get this written approval, then they can receive no compensation for the disability at issue. The section provides in relevant part:

> (1) If the person entitled to compensation . . . enters into a settlement with a third person . . . for an amount less than the compensation to which the person . . . would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation. . . .
>
> (2) If no written approval of the settlement is obtained and filed as required in paragraph (1), or if the employee fails to notify the employer of any settlement obtained from or judgment rendered against a third person, all rights to compensation and medical benefits under this chapter shall be terminated, regardless of

7

whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits under this chapter.

33 U.S.C. § 933(g). The point of this "written approval requirement [is to] prevent[] the claimant from acting unilaterally to the detriment of the employer by accepting less in settlement than it might be entitled to and thus reducing the employer's offset." I.T.O. Corp. v. Sellman, 954 F.2d 239, 242 (4th Cir. 1992).

The Board instructed the ALJ to follow the reasoning of Chavez v. Todd Shipyards Corp., 139 F.3d. 1309 (9th Cir. 1309). Chavez held that "apportionments of the employer's credit relative to third party settlements is unavailable where settlement proceeds are for injuries different from that upon which the compensation claim is based." Id. at 1312. In other words, if the claimant has two disabilities and has only settled with the third party for injuries related to one of the disabilities, then the employer still is liable for benefits based on the second disability.

This Court has approved this rationale. In Brown & Root, we ruled that the claimant, Sain, was a "person entitled to compensation" twice for two distinct disabilities, even though they both arose from the same source: "Although both asbestosis and mesothelioma are caused by exposure to asbestos, they are distinct diseases giving rise to distinct disabilities (albeit with similar symptoms) for which Sain could, and apparently did, bring separate

8

LHWCA claims." Brown & Root, 162 F.3d at 817. We found that Sain could collect compensation for his mesothelioma despite having settled with third parties for his asbestosis. Id. at 818.

The Board has interpreted the law correctly in this case. Congress designed Section 33(g) to prevent injured employees from recovering double damages for their disabilities from both their employers and third parties. The section protects an employer from having to pay for an injury for which someone else has already paid, at least in part. If an employee suffers from distinct injuries creating distinct disabilities, then Section 33(g) will only protect the employer from having to provide benefits for the specific disability that was the basis for the settlement obtained without the employer's approval. Because we have followed the rationale of both the Board and Chavez in Brown & Root, then the Board was correct to instruct the ALJ that Newport News could only invoke Section 33(g) protection if asbestosis was Richardson's only disability. Newport News should not be protected if Richardson also suffers from COPD or a distinct pulmonary disability.

Newport News asks us to reverse the Board and the ALJ because Richardson suffers only from one disability linked to several causes. The company argues that the term disability is an economic construct that defines an inability to earn wages and is only tangentially related to the underlying injury. It believes that the Court should understand Richardson's disability as his

9

inability to work at Newport News because of lung ailments, all of which are related in part to asbestos and for which Richardson was already compensated in an unapproved settlement.

Newport News's argument cannot stand in the face of our precedent. In Brown & Root, we recognized that the concept of disability is inextricably linked to the injury that causes it. We also recognized that one claimant can suffer two disabilities, even if those disabilities affect the same organ system and have similar symptoms. If Richardson suffers from both asbestosis and COPD, then he can be compensated for the COPD.

## B.

Whether the ALJ's findings that Richardson suffered from both asbestosis and COPD are supported by substantial evidence is a more difficult question. After taking evidence in a hearing and in post-hearing depositions, the ALJ originally concluded (despite Richardson's withdrawal of his claim for asbestosis): "I find that the preponderance of the evidence establishes that the Claimant suffers from asbestos, asbestos related pleural plaques, and has both restrictive and obstructive lung impairment." The ALJ then ruled that "all of these conditions contribute at least to some degree to the Claimant's impaired lung functioning and combine with his pre-existing asthma. The result is that the Claimant suffers from a single disability caused by his simultaneous exposure to asbestos fibers, smoke, dust, and fumes while welding." J.A. 885.

10

After the Board reversed the order, the ALJ made new findings of fact. One of those findings included "that Claimant has established by a preponderance of the evidence that his obstructive lung disability is causally linked to his working conditions." J.A. 907. The ALJ maintained that Richardson had proven that he was disabled by asbestosis, pleural plagues, and restrictive and obstructive lung impairment, but understood the lung impairment to be distinct from the asbestosis, and ruled that Richardson's COPD claim was not barred by Section 33(g). J.A. 911-12.

During the hearing, the ALJ heard evidence about Richardson's condition from several doctors and lung specialists and received several medical records into evidence. Dr. James P. Baker, a pulmonologist who treated Richardson throughout 1999, testified that Richardson suffered from shortness of breath related to "significant exposure to a number of volatile materials, plus asbestos." J.A. 56, 60. Baker could not diagnose Richardson with asbestosis but admitted that he had lung abnormalities. His final diagnosis was that "Mr. Richardson has both restrictive and obstructive abnormality in his lung function." J.A. 73. He also diagnosed him with bronchiectasis, "a condition which occurs when part of the airway passage is damaged by something." Id.

Dr. Joseph C. Ross, who is board certified in internal medicine and pulmonary disease, testified as an expert for Newport News. Ross had never examined Richardson, but he reviewed his

11

medical records.  Ross concluded that Richardson had "pretty mild" lung impairment.  J.A. 157.  He disagreed that Richardson had either restrictive or obstructive lung disease but admitted that he had restricted air flow and obstructive airways.  On cross-examination, Dr. Ross admitted that he was not a specialist in occupational lung disease and that he had last treated patients in 1989.  Richardson also admitted into evidence a letter from Newport News to Ross that instructed Ross as to the opinion that Newport News hoped he would espouse during this case.

The ALJ also received medical reports from several different doctors.  One such report, from Dr. James V. Scutero and dated February 28, 1995, stated that Richardson had mildly decreased vital capacity and no evidence of asbestosis.  Records from Dr. Baker in 1999 were consistent with his testimony that Richardson suffered from both restrictive and obstructive lung disorders.  In 1998 letters to Richardson's primary physician, Dr. George G. Childs, a pulmonary specialist, concluded that Richardson "has severe obstructive lung disease with a mild restriction."  J.A. 202.  Dr. Eric J. Freeman, a lung x-ray B reader who specializes in diagnosing lung conditions only by reading the x-rays, in 2000 diagnosed Richardson with "a mild restrictive lung defect of unknown etiology."  J.A. 223.  Dr. Carlos F. Acosta, Richardson's primary care physician, diagnosed him with "severe chronic obstructive pulmonary disease."  J.A. 247.  In 1998, Dr. Steven M.

Zimmet diagnoses Richardson with asbestosis, but several other doctors disputed that diagnosis.

The evidence demonstrates that Richardson has trouble breathing because he has something wrong with his lungs. The ALJ was in the best position to judge the credibility of all of the expert witnesses and medical records, and after sifting through all of the evidence and agendas, he gave the most weight to the diagnoses of asbestosis, restrictive lung disease, and obstructive lung disease. With only the doctor for Newport News, Dr. Ross, who had never even seen Richardson, disputing that Richardson had lung injuries besides the asbestosis, there appears to be substantial evidence to support the ALJ's finding that Richardson suffered from COPD, in addition to asbestosis, pleural plaques, and restrictive lung disease.

III.

We conclude that the Board interpreted the law correctly when it determined that Section 33(g) prohibits benefits only for Richardson's asbestos disability and not for the separate disability of COPD. We also conclude that substantial evidence supports the ALJ's finding that Richardson suffers from COPD in addition to asbestosis and is thus eligible for compensation. For these reasons, we affirm the Board's decision affirming the ALJ's

award of permanent partial disability benefits and deny Newport News's petition for review.

PETITION FOR REVIEW DENIED;
BOARD ORDER AFFIRMED
